So Ordered.

Dated: August 12, 2024



Beth E. Hanan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Oshkosh Refurb, Inc. and
Extreme Customs, LLC,

Debtors.

Case No. 23-25769-beh
Case No. 23-25770-beh

Chapter 11
(Jointly Administered
Under Case No. 25769)

**ORDER CONFIRMING THIRD AMENDED JOINT PLAN OF REORGANIZATION
DATED AUGUST 8, 2024**

Oshkosh Refurb, Inc. and Extreme Customs, LLC filed their *Joint Plan of Reorganization dated April 12, 2024* (ECF No. 141), as amended by the *First Amended Joint Plan of Reorganization dated May 20, 2024* (ECF No. 171), as further amended by the *Second Amended Joint Plan of Reorganization dated June 4, 2024* (ECF No. 193). Bank First NA filed its *Objection of Bank First to Confirmation of the Debtors' Second Amended Joint Plan of Reorganization* (ECF No. 203) and the court held a confirmation hearing on debtors' second amended plan on July 23, 2024. Paul G. Swanson and Michael C. Jurkash appeared on behalf of the debtors, Jerome R. Kerkman and Evan P. Schmit appeared on behalf of Bank First NA, and Anthony B. Sparks appeared on behalf of the United States Trustee. The court provided the debtors and the bank with an opportunity to settle the bank's objection and the parties read their settlement into the record.

Thereafter, the debtors filed the *Third Amended Joint Plan of Reorganization dated August 8, 2024* (ECF No. 214), reflecting the settled treatment of the secured claim held by Bank First NA in resolution of the bank's objection and the bank withdrew its objection to the plan. The debtors also filed a *Supplemental Tabulation and Summary of Ballots* (ECF No. 215) and *Declaration of Tyler G. Reilly in Support of Chapter 11 Plan Confirmation* (ECF No. 216). Each plan having been served as required by the Federal Rules of Bankruptcy Procedure and the Court's orders, no further notice being necessary, and the Court being fully advised in the premises, IT IS HEREBY ORDERED that:

1.     The requirements set forth in 11 U.S.C. § 1129(a) have been satisfied, and the *Third Amended Joint Plan of Reorganization dated August 8, 2024* (ECF No. 214), a copy of which is attached hereto, is confirmed;

2.     Notwithstanding any provision of the *Third Amended Joint Plan of Reorganization dated August 8, 2024* (ECF No. 214) confirmed by this order, the terms of this order control over the terms of the plans;

3.     The entry of this order conclusively constitutes entry of the "Confirmation Order" for purposes of Article IX, paragraph 9.1 of the *Third Amended Joint Plan of Reorganization dated August 8, 2024* (ECF No. 214);

4.     Notwithstanding the occurrence of the maturity date of the Venture CD,[1] U.S. Venture, Inc. shall keep cash in the amount of $250,000 on deposit with Peoples State Bank through December 31, 2024, as collateral for the Final DIP Facility[2] as modified by the

---

[1] As defined in the *Motion for Entry of Interim and Final Orders Authorizing Extreme Customs to Obtain Post-Petition Financing* (ECF No. 25).

[2] As defined in the *Final Order Authorizing Extreme Customs, LLC to Obtain Postpetition Financing* (ECF No. 105).

*Debtor in Possession Loan Agreement Maturity Date Extension* (ECF No. 216-2) and subject to the terms of the *Interim Order Authorizing Extreme Customs, LLC to Obtain Post-Petition Financing* (ECF No. 41), the *Final Order Authorizing Extreme Customs, LLC to Obtain Post-Petition Financing* (ECF No. 105), and the *Debtor-in-Possession Loan Agreement* (ECF No. 25-1).

# # # # #

In re:

Oshkosh Refurb, Inc. and          Case No. 23-25769-beh
Extreme Customs, LLC,          Case No. 23-25770-beh

           Debtors.          Chapter 11
                                       (Jointly Administered
                                       Under Case No. 25769)

## THIRD AMENDED JOINT PLAN OF REORGANIZATION DATED AUGUST 8, 2024

       Pursuant to 11 U.S.C. § 1121, the above-captioned debtors, Oshkosh Refurb, Inc. ("Refurb") and Extreme Customs, LLC ("Customs," and together with "Refurb", the "Debtors"), by their attorneys, Swanson Sweet LLP, hereby submit the following as their Third Amended Joint Plan of Reorganization dated August 8, 2024 (the "Plan").

<h2 style="text-align:center">ARTICLE I<br>DEFINITIONS</h2>

       As used in this Plan, the following terms shall have the respective meanings set forth below:

       **1.1**     "**Administrative Expense Claim**" means a Claim for compensation, charges and/or expenses pursuant 11 U.S.C. § 503(b) that is entitled to priority in payment pursuant to 11 U.S.C. § 507.

       **1.2**     "**Allowed**" means, with respect to any Claim other than an Administrative Expense Claim, that such Claim satisfies (and only to the extent it satisfies) the following criteria: (a) the Claim either (i) has been asserted by a proof of claim filed on or before the dated designated by the Court as the last date for filing a proof of claim with respect to such Claim, or (ii) has been scheduled by the Debtors as liquidated in amount and not contingent or disputed; and (b) the Claim (i) is not the subject of an objection filed by any party in interest within the applicable period of limitation fixed by the Code, the Bankruptcy Rules or an order of the Court, or (ii) any such objection to the Claim has been settled, or (iii) any objection to the Claim has been determined by a Final Order allowing such Claim in whole or in part.

       **1.3.**     "**Avoidance Actions**" means any action to avoid and/or recover any transfer of property pursuant to 11 U.S.C. §§ 544–551.

       **1.4.**     "**Ballot**" means the form(s) distributed to holders of impaired Claims on which the acceptance or rejection of the Plan is indicated.

**1.5.** "**Bankruptcy Court**" means the United States Bankruptcy Court for the Eastern District of Wisconsin, having subject matter over the Chapter 11 Cases.

**1.6.** "**Business Day**" means any day other than a Saturday, Sunday or a "legal holiday," as defined in Fed. R. Bankr. P. 9006(a).

**1.7.** "**Cause of Action**" means, without limitation, any and all actions, class actions, proceedings, causes of action, controversies, liabilities, obligations, rights, rights of setoff, recoupment rights, suits, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, franchises, Claims, Avoidance Actions, counterclaims, cross-claims, affirmative defenses, third-party claims, liens, indemnity, contribution, guaranty, and demands of any kind or character whatsoever, whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertible directly or derivatively, existing or hereafter arising, in contract or in tort, in law, in equity, or otherwise, whether arising under the Bankruptcy Code or any applicable nonbankruptcy law, based in whole or in part upon any act or omission or other event occurring on or prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date. Without limiting the generality of the foregoing, when referring to Causes of Action of the Debtors or their Estates, Causes of Action shall include (a) all rights of setoff, counterclaim, or recoupment and Claims for breach of contracts or for breaches of duties imposed by law or equity; (b) the right to object to any Claim or Equity Interest; (c) Claims (including Avoidance Actions) pursuant to 11 U.S.C. § 362 and chapter 5 of the Bankruptcy Code, including 11 U.S.C. §§ 510, 542, 543, 544–550, or 553; (d) Claims and defenses such as fraud, mistake, duress, usury, and any other defenses set forth in 11 U.S.C. § 558; and (e) any Claims under any state or foreign law, including any fraudulent transfer or similar claims.

**1.8.** "**Chapter 11 Cases**" means *In re Oshkosh Refurb, Inc.*, Case No. 23-25769-beh, and *In re Extreme Customs, LLC*, Case No. 23-25770-beh, jointly administered under chapter 11 of the Bankruptcy Code.

**1.9.** "**Claim**" means any right in existence on the Confirmation Date against a Debtor to (a) any payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or (b) any equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

**1.10.** "**Claimant**" means a person who or entity which has a Claim.

**1.11.** "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Court.

**1.12.** "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan.

**1.13.** "**Court**" means (a) the Bankruptcy Court, (b) any court having competent jurisdiction to enter final orders or judgments, conduct de novo review of issues and withdraw any

2

portion of the above-captioned proceeding from the Bankruptcy Court, and (c) any court having competent jurisdiction to hear appeals or certiorari proceedings from any of the foregoing.

**1.14.** "**Debtors**" has the meaning given in the preamble of this Plan.

**1.15.** "**Disallowed Claim**" means a Claim, or any portion thereof, (a) that has been disallowed by a Final Order, agreement between the holder of such Claim and the applicable Debtor, or the Plan; (b) that is listed in the Debtor's Schedules, as such Schedules may be amended, modified, or supplemented from time to time in accordance with Fed. R. Bankr. P. 1009, at zero ($0) dollars or as contingent, disputed, or unliquidated and as to which no proof of Claim has been filed by the applicable deadline or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or applicable law; or (c) that is not listed in the Debtors' schedules and as to which no proof of Claim has been timely filed by the applicable deadline or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or under applicable law

**1.16.** "**Disclosure Statement**" means the disclosure statement relating to the Plan, including, all schedules, supplements, and exhibits thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**1.17.** "**Disputed Claim**" means with respect to a Claim against a Debtor or any portion thereof (a) that is neither Allowed nor Disallowed under the Plan or a Final Order, nor deemed Allowed under 11 U.S.C. §§ 502, 503, or 1111; (b) that has not been Allowed and is listed as unliquidated, contingent, or disputed in the Schedules; or (c) for which a proof of Claim has been filed in the Chapter 11 Cases and related to which a Debtor or any other party in interest has interposed a timely objection or request for estimation, and such objection or request for estimation has not been withdrawn or determined by a Final Order.

**1.18.** "**Effective Date**" means the first Business Day following the date that is at least thirty (30) days after the Confirmation Date.

**1.19.** "**Estate**" means the bankruptcy estates of the Debtors, created on the Petition Date by 11 U.S.C. § 541.

**1.20.** "**Equity Interests**" means the ownership interests in each Debtor.

**1.21.** "**Executory Contracts**" has the meaning given in 11 U.S.C. § 365 and includes unexpired leases.

**1.22.** "**Final Order**" means an order or judgment of the Court that has not been stayed and that is no longer subject to appeal, de novo review or certiorari proceeding, and as to which no appeal, de novo review or certiorari proceeding is pending.

**1.23.** "**Insider**" shall have the meaning set forth in 11 U.S.C. § 101(31), and includes Tyler G. Reilly.

**1.24.** "**Loan Documents**" means all agreements, security agreements, mortgages applicable to an Allowed Secured Claim as of the Petition Date and as modified by the Plan.

**1.25.** "**Petition Date**" means December 15, 2023, the date on which the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

**1.26.** "**Reorganized Debtors**" means the Debtors, or any successors thereto, as reorganized, pursuant to and under the Plan, on and after the Effective Date.

**1.27.** "**Secured Claim**" means a Claim that is secured by a Lien on property in which a Debtor has an interest. By virtue of 11 U.S.C. § 506(a), a Secured Claim is limited to the value of the Debtor's interest in the property.

**1.28.** "**Unsecured Claim**" means a Claim that is not secured by a lien on property in which a Debtor has an interest. By virtue of 11 U.S.C. § 506(a), an Unsecured Claim includes the amount by which a Claim exceeds the value of any collateral (in which a Debtor has an interest) securing that Claim.

## ARTICLE II
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

In these Chapter 11 Cases, the Plan places all Claims against and Equity Interests in the Debtors, except Administrative Expense Claims, into classes set forth below. In accordance with 11 U.S.C. § 1123(a)(1), Administrative Expense Claims, as described in Article IV, have not been classified and thus are excluded from the following Classes.

**2.1.** **Class 1.** Class 1 consists of Bank First NA.

**2.2.** **Class 2.** Class 2 consists of the U.S. Small Business Administration.

**2.3.** **Class 3.** Class 3 consists of the U.S. Small Business Administration.

**2.4.** **Class 4A.** Class 4A consists of Wells Fargo Bank, N.A.

**2.5** **Class 4B.** Class 4B consists of Great America Financial Services Corp.

**2.6.** **Class 5.** Class 5 consists of General Unsecured Claims.

**2.7.** **Class 6.** Class 6 consists of Equity Interests.

## ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND CERTAIN PRIORITY TAX CLAIMS

**3.1.** **General.** Administrative Expense Claims will be paid in full with proceeds drawn from a modification of the Final DIP Facility, as described in the *Final Order Authorizing Extreme Customs, LLC to Obtain Postpetition Financing*, Case No. 26-25769-beh, ECF No. 105, with the timing of such payment depending on the nature of the Administrative Expense Claims, as more fully described below. The maturity date of the Final DIP Facility shall be extended to December

31, 2024 by modification of that certain Debtor-in-Possession Loan Agreement dated December 19, 2023. U.S. Venture, Inc. (which pledged collateral for the post-petition revolving credit facility) has agreed to continue its guarantee of such credit facility with a certificate of deposit in the amount of no more than $250,000 until December 31, 2024 on the same terms contained within the Interim Order Authorizing Extreme Customs, LLC to Obtain Post-Petition Financing (ECF No. 41) and the Final Order Authorizing Extreme Customs, LLC to Obtain Post-Petition Financing (ECF No. 105). Peoples State Bank, the Debtors, and U.S. Venture, Inc. will execute all documents reasonably necessary to extend the maturity date of the Debtor-in-Possession Loan Agreement to December 31, 2024 and all other terms of the Debtor-in-Possession Loan Agreement will remain unchanged.

**3.2.** **Statutory Fees.** On or before the Effective Date, the Debtors shall disburse cash on account of Administrative Expense Claims for fees payable pursuant to 28 U.S.C. § 1930 in an amount equal to the amount of such Administrative Expense Claims. Notwithstanding any other provision in this Plan to the contrary, the Debtors shall remain obligated to pay fees pursuant to 28 U.S.C. § 1930 and in accordance 11 U.S.C. § 1129(a)(12) until such time as the Chapter 11 Cases are closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code. These statutory fees are estimated to be $101,611.11 as of the Effective Date and are assumed to continue for one quarter after confirmation.

**3.3.** **Professional Fees and Expenses.** Unless the holder agrees to other treatment, approved Administrative Expense Claims for professional fees and expenses shall receive on the Effective Date cash equal to the allowed amount of such claim, or over time as otherwise agreed between the Debtors and the Administrative Claimant. Any Administrative Expense Claims not yet approved by the Effective Date shall be paid within thirty (30) days of their approval by the Bankruptcy Court, or over time as otherwise agreed between the Debtors and the Administrative Claimant. Legal and consulting fees incurred through plan confirmation are estimated to be $125,000 and $35,000, respectively.

**3.4.** **503(b)(9) Claims.** The Debtors have reviewed their internal records and those provided by creditors Wegmann Automotive USA, Inc. ("Wegman") and Tires Easy Holdings, LLC ("Tires Easy"). The Debtors and Wegman deem that the entirety of Claim Number No. 3 filed against Customs by Wegman to be an Administrative Expense Claim. The entirety of Claim Number No. 3, $56,737.44, will be paid on or before the Effective Date of the Plan.

The Debtors deem $6,133.23 of Claim Number 21 filed against Customs by Tires Easy to be an Administrative Expense Claim and deem the remaining $71,551.51 to be a general unsecured claim within Class 6. $6,133.23 shall be paid to Tires Easy on or before the Effective Date of the Plan.

**3.5.** **Other Administrative Expenses.** Administrative Expense Claims arising in the Debtors' ordinary course of business shall be paid in ordinary course of business and according to the terms of such obligations.

**3.6.** **Post-Petition Financing.** On February 8, 2024, the Bankruptcy Court authorized Customs to enter into a post-petition revolving credit facility in the amount of $500,000.00 with Peoples State Bank. (ECF No. 105.) The Debtors anticipate there will be no amounts owed to

Peoples State Bank on such credit facility as of the Confirmation Date. The maturity date of the facility shall be extended to December 31, 2024 by modification of that certain Debtor-in-Possession Loan Agreement dated December 19, 2023. U.S. Venture, Inc. (which pledged collateral for the post-petition revolving credit facility) has agreed to continue its guarantee of such credit facility with a certificate of deposit in the amount of no more than $250,000 until December 31, 2024 on the same terms contained within the Interim Order Authorizing Extreme Customs, LLC to Obtain Post-Petition Financing (ECF No. 41) and the Final Order Authorizing Extreme Customs, LLC to Obtain Post-Petition Financing (ECF No. 105). Customs will draw on the credit facility to the extent needed to make payments on Administrative Expense Claims and other operating expenses in the ordinary course, post confirmation.

**3.7.** **IRS Priority Tax Claim.** On June 12, 2024, Creditor the Department of Treasury – Internal Revenue Service ("IRS") filed an Amended Claim No. 1 in Case No. 23-25770-beh asserting a $15,213.16 unsecured claim, of which $11,145.91 was entitled to priority under 11 U.S.C. § 507(a)(8). The $11,146 priority claim will be paid in full 120 days after the Confirmation Date.

**ARTICLE IV**
**TREATMENT OF CLASSIFIED CLAIMS**

**4.1.** **Class 1: Bank First NA ("Bank First").**

(a) *Voting*. Class 1 is impaired and Bank First is entitled to vote to accept or reject the Plan.

(b) *Claim Summary*. On July 1, 2024, Bank First filed an Amended Proof of Claim No. 4 in Case No. 23-25770-beh asserting a total secured claim of $4,462,569.41, as of April 30, 2024, on account of (1) a commercial line of credit agreement and note as amended (loan number ending 0409) with an outstanding principal balance of $1,498,122.71, plus accrued interest of $12,539.78 and payoff/collection and legal fees of $140.00; (2) an SBA-guaranteed real estate construction loan agreement and promissory note as amended (loan number ending 6503) with an outstanding principal balance of $2,850,030.81, plus accrued interest of $5,165.65 and payoff/collection and legal fees of $35.00; and (3) Attorneys' Fees of $92,110.46 and Costs of $4,425.00 as follows:

| Loan Number | Principal | Interest | Payoff, Collection and Legal Fees | Total |
|---|---|---|---|---|
| 41017-6503 | $2,850,030.81 | $5,165.65 | $35.00 | $2,855,231.46 |
| 41012-0409 | $1,498,122.71 | $12,539.78 | $140.00 | $1,510,802.49 |

Plus:    Attorneys Fees (to Petition Date):    $26,181.55

Plus:    Attorneys Fees (as of 4/30/2024):    $65,929.91

Plus:    Costs:    $4,425.00

$4,462,569.41

Bank First also filed Amended Proof of Claim No. 1 in Case No. 23-25769-beh, asserting the same amounts above.

Bank First's claims are secured by: (1) a general business security interests in all of the Debtors' property; (2) mortgages on real estate owned by Refurb; (3) a collateral assignment of a TID Redevelopment Agreement and Pledge of TID Payments due to Refurb from the City of Oshkosh; and (4) a collateral assignment of a WEDC Grant Redevelopment Agreement and Pledge of WEDC Grant Payments due to Refurb.

(c)    _Treatment_. As to the balance remaining on the Effective Date of the Plan of the (i) principal, (ii) interest, and (iii) payoff, collection and legal fees in the amount of $140.00 related to the line of credit ending 0409, commencing on the Effective Date of the Plan, the Debtors will make 53 equal monthly payments, including interest at the rate of 9.50% per annum based on a 10-year amortization with a final 54th payment of the balance due.

As to the SBA-guaranteed real estate construction loan agreement and promissory note ending 6503, commencing on the Effective Date of the Plan, the Debtors will continue to make monthly payments this loan on the same terms as the promissory note dated September 15, 2020 regarding loan number ending 6503, with a final payment of the balance due on September 15, 2030, except as modified herein.

As to the Attorneys' Fees & Costs, and within seven days of the Effective Date, the Bank will file with the Court an amended proof of claim that

7

includes all costs of collection, including attorneys' fees & costs incurred on or after the Petition Date. If fees and costs incurred on or after the Petition Date in such proof of claim are less than or equal to $150,000.00, the Debtors shall not assert any objection to such proof of claim. If fees and costs incurred on or after the Petition Date exceed $150,000.00, the Debtors shall maintain their rights to file an objection to the Bank's claim in its entirety and shall do so within 30 days of the filing of such amended proof of claim. Such fees and costs will not be included in any calculations of secured debt applicable to any covenants in subsection (e) below or any other covenants tied to secured debt that may be found in any of the loan documents.

Such fees and costs will be paid in equal monthly installments of principal and interest at the same rate of interest and amortization detailed in that certain promissory note dated September 15, 2020 with a final payment of the balance due on September 15, 2030.

Debtors are entitled to prepay any portion of either (i) the line of credit ending 0409, (ii) the SBA-guaranteed real estate construction loan agreement and promissory note ending 6503, or (iii) the attorneys' fees and costs without penalty.

(d)  *Retention of Liens*. Bank First shall retain its liens in the same types of collateral and to the extent they existed on the Petition Date that were perfected and are unavoidable by any provision of the Bankruptcy Code that secure the amounts owed under the SBA-guaranteed real estate construction loan agreement and promissory note ending 6503 until such time as the amounts paid under such obligation have been paid in full, at which time Bank First shall execute all documents reasonably necessary to release all liens or security interests securing the amounts owed under such obligation.

Bank First shall retain its liens in the same types of collateral and to the extent they existed on the Petition Date that were perfected and are unavoidable by any provision of the Bankruptcy Code that secure the amounts owed under the line of credit ending 0409 until such time as the amounts paid under such obligation have been paid in full, at which time Bank First shall execute all documents reasonably necessary to release all liens or security interests securing the amounts owed under such obligation, including all liens and security interests in the assets of Customs.

(e)  *Loan Documents*. The Debtors shall:

(i)  Maintain debt service coverage defined as (net profit plus depreciation and amortization plus interest expense plus rent expense to stockholders or affiliates less distributions, dividends, or advances to stockholders or affiliates) divided by (payments on secured debts paid in this Plan). "Affiliate"

8

is defined as any entity owned 20% or more by company stockholders, either individually or in combination;

(ii)     Maintain a monthly loan to value ratio not to exceed 65% defined as the outstanding balance of the line of credit ending 0409 divided by the sum of (1) 70% of all of the Debtors' inventory valued at cost; (2) 75% of the Debtors' accounts receivable; (3) 75% of the Debtors' cash and; (4) a fixed amount of $250,000 attributable to the Debtor's URLs. For the avoidance of doubt, the Debtors' inventory shall be valued at cost. Compliance with this covenant shall be measured from the monthly reports provided by the Debtor pursuant to subsection (vi) below;

(iii)    The Debtors' cumulative tangible net worth (as defined in that certain Addendum A to Commercial & Construction Loan Agreement dated October 8, 2020) shall never be lower than it was on the Effective Date;

(iv)    Maintain and provide evidence of hazard insurance coverage on all property securing the line of credit ending 0409 and the construction loan ending 6503 with loss payable and mortgagee clauses in favor of Bank First;

(v)     Provide unaudited annual financial statements compiled by an independent CPA to Bank First no later than 120 days after the end of the year;

(vi)    Provide internally prepared monthly income statements and balance sheets to Bank First no later than 21 days after the end of the month for which such income statements and balance sheets are provided. Additionally, the Debtors shall provide an aged inventory detail in substantially the same form provided to Bank First during the bankruptcy cases; and

(vii)   In the event the Debtors remain in default for more than 10 business days of their payment obligations to the Bank under this Plan, or for more than 20 business days of their obligations pursuant to this subsection 4.1(e), a field audit may be conducted in accordance with the loan documents, except as otherwise modified herein. Notice of the default and pending field audit shall be given according to Sections 10.4 and 10.5 of this Plan.

All other terms of the Loan Documents as of the Petition Date will remain in effect except as amended by the terms of the Plan as of the Confirmation

9

Date. To the extent any terms in the Plan are inconsistent with the Loan Documents as of the Petition Date, the terms of the Plan shall control.

**4.2.    Class 2: U.S. Small Business Administration ("SBA") – 504 Loan.**

(a)    _Voting_. Class 2 is unimpaired and SBA is not entitled to vote to accept or reject the Plan.

(b)    _Claim Summary_. SBA filed Proof of Claim No. 5 in Case No. 23-25769-beh, asserting a secured claim of $2,305,098.24 on account of a promissory note dated July 15, 2020 in the original principal amount of $2,517,000.00. The Class 2 Claim is secured (a) by a second priority mortgage in favor of SBA on real estate owned by Refurb and (b) a second priority security interest in any of Customs' or Refurb's equipment acquired with the proceeds of the promissory note.

(c)    _Amount of Allowed Secured Claim_. As to Refurb, SBA shall be deemed to have an Allowed Secured Claim of $2,305,098.24, less any principal and interest payments made post-petition.

(d)    _Treatment._ Commencing on the Effective Date, the Debtors shall commence monthly principal and interest payments of $13,208, with all accrued principal and interest due and payable on September 1, 2045 pursuant to the terms of the promissory note dated July 15, 2020. The Debtors are entitled to prepay any portion of SBA's Class 2 Claim without penalty.

**4.3.    Class 3: U.S. Small Business Administration ("SBA") – EIDL Loans.**

(a)    _Voting_. Class 3 is unimpaired and SBA is not entitled to vote to accept or reject the Plan.

(b)    _Claim Summary_. SBA filed Proof of Claim No. 27 in Case No. 23-25770-beh asserting an unsecured claim of $2,042,712.18 on account of an Economic Injury Disaster Loan and promissory note as amended February 23, 2022. SBA also filed Proof of Claim No. 28 in Case No. 23-25770-beh asserting an unsecured claim of $537,243.15 on account of an Economic Injury Disaster Loan and promissory note dated December 13, 2021.

(c)    _Treatment_. Commencing on the Effective Date, the Debtors shall (a) commence monthly principal and interest payments of $9,795.00, with all accrued principal and interest due and payable on August 2, 2050 pursuant to the terms of the promissory note as amended February 23, 2022; and (b) commence monthly principal and interest payments of $2,575.00, with all accrued principal and interest due and payable on December 13, 2051 pursuant to the terms of the promissory note as amended February 23, 2022. The Debtors are entitled to prepay any portion of SBA's Class 3 Claim without penalty.

**4.4.     Class 4A: Wells Fargo Bank, N.A. ("Wells Fargo").**

(a)     *Voting*. Class 4A is impaired and Wells Fargo is entitled to vote to accept or reject the Plan.

(b)     *Claim Summary*. Wells Fargo filed Proof of Claim No. 8 in Case No. 23-25770-beh, asserting a total claim of $12,274.08 bifurcated into a secured portion of $3,750 and unsecured portion of $8,524.08 on account of an equipment lease agreement dated January 12, 2021. This is deemed an installment sale agreement in its entirety. The value of the collateral is equal to or greater than the total claim. The entire Class 4A Claim shall be treated as fully secured by a first priority security interest in favor of Wells Fargo on a Big Joe Order picker owned by Customs.

(c)     *Treatment.* Commencing on the Effective Date of the Plan, the Debtors shall pay the entirety of Wells Fargo's claim in thirty-six (36) monthly payments to Wells Fargo in the amount of $358.30, including interest at the rate of 3.25% per annum.

(d)     *Retention of Liens.* Wells Fargo shall retain the lien that existed on the Petition Date that was perfected and is unavoidable by any provision of the Bankruptcy Code that secure the amounts owed under the equipment lease agreement dated January 12, 2021, until such time as the amounts paid under such obligation have been paid in full, at which time Wells Fargo shall execute all documents reasonably necessary to release the lien or security interest securing the amount owed under such obligation.

**4.5.     Class 4B: Great America Financial Services Corp. ("Great America")**

(a)     *Voting*. Class 4B is unimpaired and Great America is not entitled to vote to accept or reject the Plan.

(b)     *Claim Summary*. Customs filed an amended Schedule D on May 14, 2024 listing Great America's claim as liquidated, noncontingent, and nondisputed in the amount of $14,424.00 and fully secured by a purchase money security interest in Customs' Hunter WA684-CM Aligner by virtue of an equipment finance agreement number 1614398 dated November 24, 2020. The value of the collateral is equal to or greater than the total claim.

(c)     *Treatment*. On the Effective Date, the Debtors shall cure all postpetition monetary defaults that have accrued under the equipment finance agreement. As of May 18, 2024, such monetary defaults amount to $3,989.10. Commencing on the Effective Date, the Debtors shall pay the entirety of Great America's claim according to the terms of the equipment finance agreement in equal monthly installments of $613.45, including interest and insurance charges, until the contract maturity date of December 18, 2025.

(d) *Retention of Lien*s. Great America shall retain the lien that existed on the Petition Date that was perfected and is unavoidable by any provision of the Bankruptcy Code that secures the amounts owed under the equipment finance agreement number 1614398 dated November 24, 2020, until such time as the amounts paid under such obligation have been paid in full, at which time Great America shall execute all documents reasonably necessary to release the lien of security interest securing the amount owed under the obligation.

**4.6. Class 5: General Unsecured Claims.**

(a) *Voting*. Class 5 is impaired and holders of Class 5 Claims are entitled to vote to accept or reject the Plan.

(b) *Claim Summary*. Claimants filed twenty-six proofs of claim asserting general Unsecured Claims against the Debtors not otherwise described above, excluding those duplicative proofs of claim filed by Claimants against both Debtors, or against the same Debtor. Based on the claims registers in these chapter 11 cases, the Debtors calculate the value of all Class 6 claims to be approximately $2,744,336.80.

(c) *Treatment*. The Debtors will pay all Allowed Unsecured Claims in 48 equal monthly installments as to each Creditor's Claim commencing on the Effective Date of the Plan. The Debtors may prepay the Class 5 Claimants at any time without penalty and at the Debtors' discretion.

**4.7. Class 6: Equity Interests.** The Equity Interests of Tyler G. Reilly shall retain their interest in the Debtors, subject to the terms of this Plan.

### ARTICLE V
### PROVISION FOR THE TREATMENT OF DISPUTED CLAIMS

**5.1. Objection to Claims; Resolution.** Each Debtor, Reorganized Debtor, and any other party in interest may object to the allowance of any Claims filed with the Court with respect to which any party in interest disputes liability in whole or in part. All objections shall be litigated to a Final Order; provided, however, that any party in interest may compromise and settle objections to Claims without notice and without the approval of the Court. Unless otherwise allowed by the Court, all parties in interest shall serve and file all objections to Claims within thirty (30) days after the Effective Date.

**5.2. Delay of Distribution on a Disputed Claim.** No distribution will be made on account of a Disputed Claim until resolution of all disputes to the Claim by a Final Order. At the time a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder of the Allowed Claim shall receive the payment(s) and distribution(s) to which it is then entitled under the Plan. Disputed Claims which are disallowed shall receive nothing to the extent they are disallowed.

12

# ARTICLE VI
## MEANS OF IMPLEMENTATION OF THE PLAN

**6.1     Plan Funding.** The Debtors will make all payments to be made on or as soon as practicable after the Effective Date from a combination of: (a) cash generated from the business income of the Reorganized Extreme Customs, LLC; (b) cash received from payments of the City of Oshkosh's contribution to Reorganized Oshkosh Refurb, Inc.; and (c) any other sources, including but not limited to recoveries from other assets identified in the Schedules and recoveries on claims. The Debtors will make all remaining payments from a combination of: (a) cash generated from the business income of the Reorganized Extreme Customs, LLC; (b) cash received from payments of the City of Oshkosh's contribution to Reorganized Oshkosh Refurb, Inc.; and (c) any other sources, including but not limited to recoveries from other assets identified in the Schedules and recoveries on claims.

**6.2.     Managers, Directors, and Insider.** After confirmation of the Plan, Tyler G. Reilly shall serve as the sole manager of both Debtors and chairman of Refurb's board of directors, with compensation to be paid in an amount not exceeding $125,000 annually while payments are made pursuant to this Plan.

**6.3.     Governance Documents.** On or as soon as practicable after the Effective Date, the Reorganized Debtors shall make any necessary modifications to their governance or operating documents to implement the Plan. The Debtors shall include in their governance documents a provision prohibiting the issuance of nonvoting equity securities.

**6.4     Distributions Under the Plan.** The Ballot will request from each Claimant holding an Allowed Claim a designation of the address to which they wish distributions to be mailed. If no such address is provided, then distributions shall be mailed to Claimants holding Allowed Claims at the address shown on the Debtors' Schedules, or, in the case of those Claimants holding Allowed Claims who filed Proof of Claims in this action, in accordance with the address shown on those documents. Any Claimant holding an Allowed Claim may change the address for mailing of its distribution check by written notice to counsel for the Debtors. Any distribution checks properly sent to such addresses which are returned shall become the property of the Reorganized Debtors without further liability for such distributions. The Reorganized Debtors shall manage all installments, payments, and distributions to be made under the Plan.

**6.5.     Reorganized Debtors.** The Debtors shall emerge from Bankruptcy as the Reorganized Debtors, with all the rights, powers, duties, and obligations as set forth below:

**(a)     Vesting of Property.** Except as expressly provided in this Plan, on the Effective Date, all assets of the Debtors' Estates shall vest in the Reorganized Debtors. Except as otherwise provided in the Plan or in the Confirmation Order, after confirmation of the Plan, all property dealt with by the Plan is free and clear of all claims and interests of creditors and equity security holders, in accordance with 11 U.S.C. § 1141(c).

**(b)     Attorney Client Privilege.** The Reorganized Debtors shall stand in the same position as the Debtors with respect to any right the Debtors may have to an attorney-client privilege, the work product doctrine, or any other privilege against production, and the

Reorganized Debtors shall succeed to all of the Debtors' rights to preserve, assert or waive any such privilege.

(c) **Retention of Professionals.** The Reorganized Debtors may retain such attorneys (including special counsel), accountants, advisors, expert witnesses, and other professionals as they shall consider advisable without necessity of approval of the Court. Persons who served as professionals to the Debtors prior to the Effective Date may serve as professionals to the Reorganized Debtors. The fees and expenses of the Reorganized Debtors and professionals retained by the Reorganized Debtors shall be paid by the Reorganized Debtors in the ordinary course of business and without Court review or approval.

(d) **Causes of Action.** All Causes of Action that are not otherwise compromised, settled, released, or waived pursuant to the terms of this Plan shall be retained by the Reorganized Debtors and preserved. Except as otherwise expressly provided in the Plan, the Reorganized Debtors retains all rights, claims, defenses, setoffs, recoupment, and causes of action the Debtors or their estate may have against any third parties, and may pursue and/or enforce such retained rights, claims, defenses or causes of action in accordance with applicable nonbankruptcy law. Confirmation of this Plan shall not preclude or estop the Debtors from pursuing any claims of the estate, including any Causes of Action including Avoidance Actions, nor any other claims against any of the Debtors' creditors for offset or Causes of Action.

(e) **Bar Date and Resolution of Claims.** All holders of an Administrative Claim, including, but not limited to, for professional fees, which is not yet an Allowed Claim, must file with the Court their final applications for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Effective Date and in accordance with the substantive and procedural requirements in the Bankruptcy Code and orders in these Chapter 11 Cases. The Reorganized Debtors shall be responsible for the resolution of Claims and shall have standing to object to the allowance of any Claim and to assert and prosecute any counterclaim relative thereto (without prejudice to any right of any other party in interest to do so under applicable law). All such objections and counterclaims shall be filed within thirty (30) days of the filing of said claim.

6.6. **Prepayments.** The Reorganized Debtors may prepay any amount to any Class of Claims.

6.7. **Assumption of Liabilities.** The Reorganized Debtors will assume all liabilities of the Debtors as set forth in the Plan. In addition, the Reorganized Debtors will be responsible for the payment of Administrative Expense Claims, such as professional fees and post-petition debts incurred by the Debtors in the ordinary course of its business.

6.8. **Extinguishment of Liens.** Except as otherwise provided in this Plan, all Liens on the Debtors' or their Estates' property are extinguished on the Confirmation Date.

**ARTICLE VII**
**EXECUTORY CONTRACTS**

7.1. **General.** Any and all executory contracts or unexpired leases to which a Debtor was a party as of the Petition Date shall be deemed assumed as of the Effective Date, unless such

executory contract or unexpired lease (i) is rejected by the operation of this Plan, (ii) was previously assumed or rejected by a Debtor, pursuant to a Final Order, (iii) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto, or (iv) is the subject of a motion to assume, assume and assign, or reject filed by a Debtor on or before the Confirmation Date.

**7.2.** **Approval of Assumptions or Rejections.** Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions or rejections provided for in this Plan pursuant to 11 U.S.C. §§ 365(a) and 1123. Each executory contract and unexpired lease assumed pursuant to this Plan shall vest in, and be fully enforceable by, the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of this Plan, any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

**7.3.** **Bar Deadline.** The deadline for filing a proof of Claim based on a claim arising from the rejection of a lease or contract is thirty (30) days after the date the Court enters the Confirmation Order.

## ARTICLE VIII
## DISCHARGE; RELEASE; INJUNCTION

**8.1.** **General.** Except as otherwise provided in this Plan, the distributions and rights afforded in this Plan shall be in complete and full satisfaction, effective as of the Effective Date, of all Claims of any nature whatsoever against the Debtors, their Estates, or the Reorganized Debtors.

**8.2.** Except as otherwise provided in the Plan or in the Confirmation Order, the Debtors shall obtain a discharge to the fullest extent authorized by the Bankruptcy Code.

**8.3.** **Exculpation.** Confirmation of the Plan shall constitute exculpation of the Debtors and their agents, managers, financial advisors, attorneys, accountants, and other professionals, to the maximum extent permitted by applicable law, are released and exculpated from, any Claim, Interest, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, loss, remedy, or liability for any claim in connection with or arising out of the administration of the Chapter 11 Cases, including, but not limited to, the solicitation of votes for, or confirmation of, the Plan; the funding of the Plan; and other actions taken in furtherance of the Plan up to the Effective Date. The exculpation does not cover Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud or willful misconduct, or to any post-Effective Date obligations of the Reorganized Debtors.

**8.4.** **Modification of Automatic Stay for *Quinones* Claimants.** If, on the Effective Date, any of the Claims of Claimants Jesus Quinones, Taylor Huisman, Kody Weber, Jacob Vandenhaven, Kyle Anklam, and Nayshaly Aponte are Disputed Claims, the Claimant holding the Disputed Claim shall be granted a limited modification of the automatic stay to pursue such Claimant's putative rights against Customs within the proceeding currently captioned as *Quinones et al. v. Extreme Customs, LLC et al.*, Case No. 21-cv-995-WCG (filed Aug. 25, 2021) ("*Quinones*"). For the avoidance of doubt, this limited modification of stay does not operate to

15

Case 23-25769-beh     Doc 214     Filed 08/08/24     Page 15 of 19
Case 23-25769-beh     Doc 221     Entered 08/12/24 14:56:10     Page 18 of 22

grant such Claimants any rights against any other party protected by this Plan or to grant such Claimants any other rights to pursue putative remedies not prayed for within *Quinones* as of the Petition Date.

**8.5.** **Injunction.** Commencing on the Effective Date, except as expressly provided otherwise in this Plan, the holders of all Claims shall be enjoined from asserting against the Debtors, or its assets and property, any other or further liabilities, liens, obligations or claims, including, but not limited to, all principal and accrued and unpaid interest on the debts of the Debtors, based on any act or omission, transaction, or other activity or security interest, or other agreement of any kind or nature of agreement occurring, arising or existing prior to the Confirmation Date that was or could have been the subject of any claim, whether or not allowed. All legal or other proceedings or actions seeking to establish or enforce liabilities, liens, claims, or obligations of any nature against the Debtors or assets or properties received or retained by the Reorganized Debtors with respect to debts and obligations, if any, of the Estate, arising before the Confirmation Date, shall be permanently stayed and enjoined, except as otherwise specifically provided for in this Plan. ***So long as the Debtors make all payments pursuant to the terms of this Plan, any creditor who also holds rights against Tyler G. Reilly on account of a claim, debt, or obligation treated in this Plan is enjoined from commencing any judicial or other proceeding or otherwise exercising their rights with respect to such claim, debt, or obligation against Tyler G. Reilly, who will devote his best efforts to carrying out the business of the Reorganized Debtors for the benefit of creditors paid pursuant to the Plan.***

**8.6.** **Solicitation of Plan.** As of the Confirmation Date: (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors and each of their respective directors, officers, employees, affiliates, agents, restructuring advisors, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

## ARTICLE IX
## CONDITIONS TO CONFIRMATION AND EFFECTIVENESS

**9.1.** **Conditions to Confirmation.** The Plan shall not be confirmed unless and until each of the following conditions has occurred or has been waived in writing by the Debtors: (1) the Bankruptcy Court has entered an order approving the Disclosure Statement; (2) the Bankruptcy Court enters the Confirmation Order in a form and substance acceptable to the Debtors; and (3) there is no stay of the Confirmation Order.

**9.2.** **Conditions to Effective Date.** The Plan shall not become effective unless and until each of the following conditions has occurred or has been waived in writing by the Debtors: (1) the Bankruptcy Court enters the Confirmation Order in a form and substance acceptable to the

16

Debtors; (2) There has not been an appeal of the Confirmation Order; and (3) there is no stay of the Confirmation Order.

## ARTICLE X
## MISCELLANEOUS PLAN PROVISIONS

**10.1.    Closing.** Upon substantial consummation of the Plan, as defined in 11 U.S.C. § 1101(2), the Debtors may apply for an order closing the Chapter 11 Cases. The Plan shall be deemed to be substantially consummated after (a) the order confirming the Plan has become final; (b) the Debtors or the Reorganized Debtors has assumed the business of the management of the property dealt with by the Plan; (c) payments under the Plan have commenced, and (d) with the exception of pending adversary proceedings, all motions, applications, contested matters, and other pending matters in the main Chapter 11 Case have been finally resolved. For the avoidance of doubt, the Debtors may seek an order closing the case notwithstanding the continued pendency of any adversary proceedings.

**10.2.    Reopening.** The Chapter 11 Cases may be reopened pursuant to 11 U.S.C. § 350(b) to administer assets, to grant the Debtors other relief, to seek conversion or dismissal upon occurrence of a subsequent material default under the Plan, to hear and resolve any matter or proceeding over which the Court has retained jurisdiction, or for other cause.

**10.3.    Payments.** Any payments to be made by the Debtors for services or for costs and expenses in connection with this case, or in connection with the Plan and incident to this case, have been approved by, or are subject to the approval of the Court, as reasonable.

**10.4.    Default with Respect to the Debtors and Certain Creditors.** If the Debtors fail to timely perform an obligation to Bank First NA or the IRS under this Plan, or if either Bank First NA or the IRS fails to timely perform an obligation to the Debtors under this Plan (the "defaulting party"), the party seeking to enforce the obligation shall provide the defaulting party with notice of the failure with an opportunity to cure the failure as described below:

(a)    *The Debtors' Default as to Payment Obligations*. Notice to the Debtors as defaulting parties for the failure to make any payment when due to Bank First or the IRS shall provide the Debtors with 10 business days' notice to cure. However, the Debtors shall not be entitled to any notice if notice has been given twice during the previous 12-month period to the Debtors for a failure to timely make a payment to the party.

(b)    *The Debtors' Default of Non-Payment Obligations*. Notice to the Debtors as defaulting parties for the failure to comply with any of their obligations to Bank First NA or the IRS under the Plan shall provide the Debtors with 20 business days' notice to cure. However, the Debtors shall not be entitled to any notice if notice has been given twice during the previous 12-month period to the Debtors for the substantially same failure.

(c)    *Non-Debtors' Default of Obligations Under the Plan*. Notice to Bank First NA or the IRS as a defaulting party for the failure to comply with

17

Case 23-25769-beh    Doc 214    Filed 08/08/24    Page 17 of 19
Case 23-25769-beh    Doc 221    Entered 08/12/24 14:56:10    Page 20 of 22

its obligations to the Debtors under the Plan shall provide the defaulting party with 20 business days' notice to cure.

(d)  *Effect Upon Mailing and Emailing*. All notices are effective upon being emailed and mailed via first class mail, postage prepaid, to the defaulting party's addresses as shown in the Court's file or otherwise provided in writing, including email, to the party asserting a default.

**10.5.  Notice and Service.** Any notice required under the Plan to be served or delivered shall be sent as follows:

(a)  *If to the Debtors*. Mailed by first class mail, postage prepaid, and emailed to:

Extreme Customs LLC
Oshkosh Refurb, Inc.
2175 S. Koeller St.
Oshkosh, WI 54902-9203
Email: info@extremecustoms.com

Paul G. Swanson, Esq.
Michael C. Jurkash, Esq.
107 Church Ave.
Oshkosh, WI 54901
Email: pswanson@swansonsweet.com
mjurkash@swansonsweet.com

(b)  *If to a Non-Debtor Party*. Mailed by first class mail, postage prepaid, and emailed to the party at the mailing address and the email address on file with the Court, and mailed by first class mail, postage prepaid, and emailed to the party's attorney at mailing address and email address on file with the Court.

(c)  *Change of Addresses*. A party may provide any party with a change of address and attorney for notices under the Plan by email or regular mail.

**ARTICLE XI**
**RETENTION OF JURISDICTION BY THE COURT**

After the Confirmation Date, the Court may retain jurisdiction, and if the Chapter 11 Cases are closed, reopen them (or as many as are appropriate), for the following purposes, or as otherwise permitted by law:

**11.1.**  To consider any modification to this Plan pursuant to 11 U.S.C. § 1127 or to correct any defect, cure any omission, or reconcile any inconsistency of this Plan or in the Confirmation Order, to the extent necessary to carry out the purposes and intent of this Plan.

**11.2.**  To hear and determine any objections to the allowance of Claims and requests for estimation of Claims.

**11.3.**  To hear and determine any applications, adversary proceedings, motions, and other contested matters not resolved in this Plan.

**11.4.** To hear any and all applications for compensation of professional services and disbursements and any other and similar fees incurred prior to the Confirmation Date.

**11.5.** To enforce the terms and provisions of payments, rights and interests acquired or created by this Plan, or by earlier orders of the Court.

**11.6.** To enter any order necessary to consummate, interpret, and effect the provisions of this Plan and the Confirmation Order, or as may otherwise be required by the Bankruptcy Code.

**ARTICLE XII**
**<u>CONCLUSION</u>**

The Plan set forth herein reflects the Debtors' best efforts to reorganize in an orderly fashion. The Plan attempts to provide full payment to creditors. This Plan deals fairly and equitably with all the creditors and approval of this Plan is in the best interests of the Debtors' creditors.

Dated: August 8, 2024.               **SWANSON SWEET LLP**

By: *<u>/s/ Michael C. Jurkash</u>*
Paul G. Swanson
Peter T. Nowak
Michael C. Jurkash
107 Church Avenue
Oshkosh, WI 54901
Tel: (920) 235-6690; Fax: (920) 426-5530
pswanson@swansonsweet.com
pnowak@swansonsweet.com
mjurkash@swansonsweet.com

***Counsel for the Debtors***

19